UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| DECCAN VALUE ADVISORS FUND L.P., DECCAN VALUE ADVISORS FUND LTD., A/D VALUE FUND L.P., and Y/D VALUE FUND L.P., | § § § § § § | Civil Action No. 5:09-CV-00080 |
| Plaintiffs, | § § | |
| PANALPINA WORLD TRANSPORT (HOLDING) LTD., GERHARD FISCHER, BRUNO SIDLER, MONIKA RIBAR, and THE ERNST GOHNER FOUNDATION, | § § § § § § | |
| Defendants. | § § | |

**<u>DEFENDANTS PANALPINA WORLD TRANSPORT (HOLDING) LTD. and MONIKA RIBAR'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS*, OR, ALTERNATIVELY, TO TRANSFER VENUE and BRIEF IN SUPPORT</u>**

Elizabeth L. Yingling, Attorney-in-Charge
State Bar No. 16935975
Southern District Bar No. 29405
**BAKER & McKENZIE LLP**
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Telephone: 214/978/3000
Facsimile: 214/978/3099
elizabeth.l.yingling@bakernet.com

**ATTORNEYS FOR DEFENDANTS
PANALPINA WORLD TRANSPORT
(HOLDING) LTD. and MONIKA RIBAR**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................................2

II.   ARGUMENTS AND AUTHORITIES...............................................................3

    A.  The Case Should Be Dismissed Based Upon the Doctrine of *Forum Non Conveniens* ................................................................................................3

    B.  Alternatively, the Case Should Be Transferred to the Houston Division Pursuant to 28 U.S.C. §1404(a) ....................................................................12

III.  CONCLUSION................................................................................................20

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

C<small>ASES</small>

*Alpine Atl. Asset Mgmt. AG v. Comstock,*
  552 F. Supp. 2d 1268 (D. Kan. 2008) ............................................................5

*Alpine View Co. Ltd. v. Atlas Copcoab,*
  205 F.3d 208 (5th Cir. 2000) ......................................................................3

*BBC Chartering & Logistics GMBH & Co. v. Siemens Wind Power A/S,*
  546 F. Supp. 2d 437 (S.D. Tex. 2008) ................................................... passim

*Dickson Marine, Inc. v. Panalpina, Inc.,*
  179 F.3d 331 (5th Cir. 1999) ................................................................3, 4, 5

*Doe v. Catholic Soc'y of Religious & Literary Educ.,*
  No. C-09-33, 2009 U.S. Dist. LEXIS 35635 (April 9, 2009) ................................13

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947) .........................................................................3, 4, 13

*Hanby v. Shell Oil Co.,*
  144 F. Supp. 2d 673 (E.D. Tex. 2000) ......................................................13, 17

*Howe v. Goldcorp. Inv., Ltd.*
  946 F.2d 944 (1st Cir. 1991) ...........................................................10, 11, 12

*In re Air Crash Disaster Near New Orleans,*
  821 F.2d 1147 (5th Cir. 1987), vacated on other grounds sub nom.,
  *Pan Am World Airways, Inc. v. Lopez,*
  490 U.S. 1032 (1989) ................................................................................3

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
  610 F. Supp. 2d 600 (S.D. Tex. 2009) ..........................................................19

*In re Volkswagen of Am., Inc.,*
  545 F.3d 304 (5th Cir. 2008) ..................................................12, 13, 17, 18

*Lasala v. TSB Bank, PLC,*
  514 F. Supp. 2d 447 (S.D.N.Y. 2007) ............................................................5

*Medicor AG v. Arterial Vascular Eng'g,*
  No. 97-15465, 1998 U.S. App. LEXIS 5528 (9th Cir. Feb. 13, 1998) ......................5

*Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.,*
  No. H-09-0422, 2009 U.S. Dist. LEXIS 54747 (S.D. Tex. June 26, 2009).................14, 18, 19

*O'Keefe v. Noble Drilling Corp.,*
  No. 08-41305, 2009 U.S. App. LEXIS 20553 (5th Cir. Sept. 15, 2009) ...................................3

*O'Toole v. Northrop Grumman Corp.,*
  499 F.3d 1218, 1224-25 (10th Cir. 2007) ..........................................................................17, 18

*Robertson v. Kiamichi R.R. Co.,*
  42 F. Supp. 2d 651 (E.D. Tex. 1999) ...............................................................................................13

*United States v. Stanford,*
  630 F. Supp. 2d 751 (S.D. Tex. 2009) .............................................................................................19

*Veiga v. World Meteorological Organisation,*
  486 F. Supp. 2d 297 (S.D.N.Y. 2007)...............................................................................................5

*Warlop v. Lernout,*
  473 F. Supp. 2d 260 (D. Mass. 2007) ..........................................................................................9, 10

## STATUTES

28 U.S.C. § 1391 ...........................................................................................................................13

28 U.S.C. § 1404(a) ...............................................................................................................1, 12, 13

DALDMS/668792.2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| DECCAN VALUE ADVISORS FUND L.P., | § | Civil Action No. 5:09-CV-00080 |
| DECCAN VALUE ADVISORS FUND LTD., | § | |
| A/D VALUE FUND L.P., and Y/D VALUE | § | |
| FUND L.P., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| PANALPINA WORLD TRANSPORT | § | |
| (HOLDING) LTD., GERHARD FISCHER, | § | |
| BRUNO SIDLER, MONIKA RIBAR, and | § | |
| THE ERNST GOHNER FOUNDATION, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANTS PANALPINA WORLD TRANSPORT (HOLDING) LTD. and MONIKA RIBAR'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS*, OR, ALTERNATIVELY, TO TRANSFER VENUE and BRIEF IN SUPPORT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW DEFENDANTS, PANALPINA WORLD TRANSPORT (HOLDING) LTD. ("Panalpina Holding") and MONIKA RIBAR ("Ribar") (collectively "Defendants"), and file this their Motion to Dismiss Plaintiffs' Complaint pursuant to the doctrine of *forum non conveniens* and, in the alternative, their Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), and in support thereof would respectfully show the Court as follows: [1]

---

[1] Contemporaneously herewith, Defendants are filing their Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(6) and 9(b), as well as pursuant to the Private Securities Litigation Reform Act of 1995. Defendants file this Motion subject to the defenses raised therein including, specifically, their objections to personal jurisdiction.

# I.
## PRELIMINARY STATEMENT

Defendant, Panalpina Holding, is a Swiss company that has no business operations or employees in the United States. Its stock is traded exclusively on the Swiss Exchange. It files no documents with the U.S. Securities and Exchange Commission, and its stock is not otherwise traded on any U.S. exchange or on the U.S. OTC Bulletin Board. The individual Defendants are all Swiss citizens, with no residences in the United States. Of the four Plaintiffs, one is a Cayman Islands entity. Importantly, none of the Plaintiffs were formed, or have their principal place of business, in Texas.

The crux of Plaintiffs' Complaint is that Defendants failed to disclose that "Panalpina's important operations in Nigeria depended on bribes to customs agents in Nigeria . . . ." This, of course, begs the question: Why was this case filed in Laredo, Texas? Plaintiffs' only stated reason for filing this action in this Court is the conclusory claim that "Panalpina has maintained an office in Laredo, Texas. . . ." However, Panalpina Holding has not, and does not. Rather, Panalpina, Inc., a U.S. subsidiary of Panalpina Holding, has an office in Laredo. Other than this allegation, Plaintiffs assert no other "facts" that even arguably tie this case to this forum.

Because Switzerland – the headquarters of Panalpina Holding and the country from which the allegedly fraudulent statements emanated – is the clear focal point of this litigation involving stock traded exclusively on the Swiss Exchange, dismissal of this case is appropriate under the doctrine of *forum non conveniens*. Alternatively, in the unlikely event the Court disagrees with the *forum non conveniens* analysis, Defendants respectfully request that the case be transferred to the Houston Division, as that venue is more convenient for all of the parties.

**II.**
**ARGUMENTS AND AUTHORITIES**

A.    **The Case Should Be Dismissed Based Upon the Doctrine of *Forum Non Conveniens.***

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized. . . ." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507 (1947).   Thus, "a federal district court may decline to exercise jurisdiction where it appears that the convenience of the parties and the court in the interests of justice indicate the action should be tried in another forum." *BBC Chartering & Logistics GMBH & Co. v. Siemens Wind Power A/S,* 546 F. Supp. 2d 437, 443 (S.D. Tex. 2008).   A court faced with a *forum non conveniens* motion must conduct a two-step analysis.   First, the district court must determine whether an alternate forum is available and adequate.   *O'Keefe v. Noble Drilling Corp.,* No. 08-41305, 2009 U.S. App. LEXIS 20553, at *8 (5th Cir. Sept. 15, 2009); *Alpine View Co. Ltd. v. Atlas Copcoab,* 205 F.3d 208, 221 (5th Cir. 2000).   In determining whether or not a foreign forum is both adequate and available, the Fifth Circuit has provided the following guidance:

> The foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum.   A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.

*In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147, 1165 (5th Cir. 1987), vacated on other grounds sub nom., *Pan Am World Airways, Inc. v. Lopez,* 490 U.S. 1032 (1989). Once it is determined that an alternative forum is adequate and available, the court must then consider private and public interest factors.   *Dickson Marine, Inc. v. Panalpina, Inc.,* 179 F.3d 331, 342 (5th Cir. 1999).

The private interest factors to be considered include: "(1) the relative ease of access to sources of proof; (2) availability of compulsory process for the attendance of unwilling witnesses, and the costs of obtaining the attendance of willing, [sic] witnesses; (3) the possibility of view of premises, if appropriate to the action; and (4) all other practical problems that make the trial of case easy, expeditious and inexpensive." *BBC Chartering,* 546 F. Supp. 2d at 444; *see also Gulf Oil,* 330 U.S. at 508.  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having a trial in a forum both familiar with the law that must govern the action; (4) the avoidance of unnecessary problems and conflicts of law, or an application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *BBC Chartering,* 546 F. Supp. 2d at 444; *see also Gulf Oil,* 330 U.S. at 508-09.  Importantly, no one private or public interest factor should be given conclusive weight, and the "central focus of the forum non conveniens inquiry . . . is convenience." *Dickson Marine,* 179 F. 3d at 342.

As to the first part of the test, Switzerland is unquestionably an available and adequate forum.[2]  First, as Swiss residents, each of the Defendants would be subject to jurisdiction in a Swiss court.[3]  Second, Plaintiffs, as shareholders in a Swiss company, may institute an action against the Defendants in a Swiss court.[4]  In addition, Swiss law provides that shareholders who purchase stock in a Swiss company pursuant to false representations may sue under Swiss law for damages suffered as a result of the

---

[2] *See* Declaration of Paul Bürgi, ¶ 6, attached hereto as Exhibit "A," incorporated by reference as if set forth in full (hereinafter "Bürgi Decl. ¶ __").
[3] *Id.,* ¶7.
[4] *Id.,* ¶8.

securities' decrease in value resulting from the false representations.[5]    Moreover, unwilling witnesses in Switzerland would be subject to compulsory process in a Swiss court.[6]    In addition, several federal courts have previously held that Switzerland is an adequate forum in the context of a *forum non conveniens* analysis.  *See, e.g., Dickson,* 179 F.3d at 342 (finding Switzerland an adequate alternative forum); *Medicor AG v. Arterial Vascular Eng'g,* No. 97-15465, 1998 U.S. App. LEXIS 5528, at *2 (9th Cir. Feb. 13, 1998) (finding Switzerland adequate, and noting that "[a]n alternative forum is almost always adequate if the defendant is subject to service there"); *Alpine Atl. Asset Mgmt. AG v. Comstock,* 552 F. Supp. 2d 1268, 1277-78 (D. Kan. 2008) (finding Switzerland an adequate alternative forum); *Lasala v. TSB Bank, PLC,* 514 F. Supp. 2d 447, 454-55 (S.D.N.Y. 2007) (same); *Veiga v. World Meteorological Organisation,* 486 F. Supp. 2d 297, 303-06 (S.D.N.Y. 2007) (same).

Therefore, because Switzerland is an available and adequate forum, the private interest factors must be considered.  It is indisputable that the focal point of this case is Switzerland, as the press releases and annual reports that are alleged to be deceptive were disseminated from Switzerland, the corporate Defendant is headquartered in Switzerland, the stock is traded exclusively on the Swiss Exchange, and the individual Defendants alleged to have been primary participants in the fraud reside in Switzerland.[7]    Thus, access to sources of proof is more readily available in Switzerland than it is in Laredo, Texas, specifically, or the United States, generally.  Indeed, Plaintiffs have not alleged

---

[5] *Id.,* ¶9.
[6] *Id.,* ¶10.
[7] *See* Declaration of Christoph Hess, ¶¶30, 31, 3, 13, 34, attached hereto as Exhibit "B," and incorporated by reference as if set forth in full (hereinafter "Hess Decl. ¶ __"); *see also* Declaration of Monika Ribar, ¶ 4, attached hereto as Exhibit "C," and incorporated by reference as if set forth in full.

that any events giving rise to the claims asserted in this case occurred in Laredo, Texas.[8]
Further, Plaintiffs' references to Houston fail to allege any substantive actions by any
Defendants that would give rise to the claims asserted herein.[9]  Indeed, Plaintiffs have not
pointed to any evidence that would even arguably be present within the borders of the
United States.

Moreover, none of the Plaintiffs are residents of Texas[10] and, further, Panalpina
Holding conducts no business in Texas, specifically, or in the United States, generally.[11]
Indeed, Panalpina Holding has no offices in the U.S. and, accordingly, the likelihood of
any relevant evidence existing in the hands of the Defendants in the United States is, at
best, remote.[12]  Accordingly, this first private interest factor weighs heavily in favor of
Switzerland.

The second private interest factor "examines the availability of compulsory
process of securing the attendance of unwilling witnesses and the costs of securing the
appearance of willing witnesses."  *See BBC Chartering,* 546 F. Supp. 2d at 447.  Of
course, neither this District Court nor any other U.S. District Court can compel the
attendance of unwilling witnesses in Switzerland, as such witnesses are far outside a U.S.
District Court's subpoena power.  However, Swiss courts are authorized to obtain, by
compulsory process, the attendance of unwilling Swiss residents.[13]  Further, the costs
associated with travel expenses to fly willing Swiss witnesses to Laredo, Texas logically
far exceeds any such costs associated with securing the attendance of those witnesses in

---

[8] *See generally,* Complaint (" Compl.").
[9] *See* Compl., ¶¶16, 23.
[10] *See* Compl., ¶¶11-14.
[11] *See* Hess Decl., ¶¶3-12.
[12] *See id.* at ¶5.
[13] Bürgi Decl., ¶10.

**MOTION TO DISMISS FOR *FORUM NON CONVENIENS,***
**OR, ALTERNATIVELY, TO TRANSFER VENUE**                                    **Page 6**

that any events giving rise to the claims asserted in this case occurred in Laredo, Texas.[8]

Further, Plaintiffs' references to Houston fail to allege any substantive actions by any

Defendants that would give rise to the claims asserted herein.[9]  Indeed, Plaintiffs have not

pointed to any evidence that would even arguably be present within the borders of the

United States.

Moreover, none of the Plaintiffs are residents of Texas[10] and, further, Panalpina

Holding conducts no business in Texas, specifically, or in the United States, generally.[11]

Indeed, Panalpina Holding has no offices in the U.S. and, accordingly, the likelihood of

any relevant evidence existing in the hands of the Defendants in the United States is, at

best, remote.[12]  Accordingly, this first private interest factor weighs heavily in favor of

Switzerland.

The second private interest factor "examines the availability of compulsory

process of securing the attendance of unwilling witnesses and the costs of securing the

appearance of willing witnesses."  *See BBC Chartering,* 546 F. Supp. 2d at 447.  Of

course, neither this District Court nor any other U.S. District Court can compel the

attendance of unwilling witnesses in Switzerland, as such witnesses are far outside a U.S.

District Court's subpoena power.  However, Swiss courts are authorized to obtain, by

compulsory process, the attendance of unwilling Swiss residents.[13]  Further, the costs

associated with travel expenses to fly willing Swiss witnesses to Laredo, Texas logically

far exceeds any such costs associated with securing the attendance of those witnesses in

---

[8] *See generally,* Complaint (" Compl.").
[9] *See* Compl., ¶¶16, 23.
[10] *See* Compl., ¶¶11-14.
[11] *See* Hess Decl., ¶¶3-12.
[12] *See id.* at ¶5.
[13] Bürgi Decl., ¶10.

**MOTION TO DISMISS FOR *FORUM NON CONVENIENS,***
**OR, ALTERNATIVELY, TO TRANSFER VENUE**                                    **Page 6**

their own country.  Thus, the second private interest factor clearly weighs in favor of Switzerland.

The next relevant private interest factor, "other practical problems," also weighs in favor of Switzerland as the more convenient forum.  There is simply no legitimate rationale for forcing all parties involved – none of whom reside in Texas – to incur unnecessary costs associated with conducting a lengthy trial in Laredo, Texas.  There are no ties to Texas that justify such an inconvenience.  Because the most salient evidence and witnesses are located in Switzerland, the relative inconvenience of having three American corporate Plaintiffs and one Cayman Islands corporate Plaintiff travel to Switzerland is far less than the reverse.

Finally, the last private interest factor to be considered is the Plaintiffs' choice of forum.  While a strong presumption exists in favor of the plaintiff's choice of forum, such choice is not dispositive.  *BBC Chartering,* 546 F. Supp. 2d at 448.  In this case, one of the Plaintiffs is not even an American citizen[14] and, with respect to that Plaintiff – DVAF – its choice of forum should be afforded little deference.  *See id.*  As to the remaining three Plaintiffs, because there is no reasonable basis for them having chosen Laredo, Texas as the forum for this action, Defendants submit that their choice of forum should, likewise, be afforded little deference.  Therefore, this factor does not weigh heavily in favor of Laredo, Texas over Switzerland.

Turning to the public interest factors, clearly the administrative burdens arising from the management of the case in Laredo, Texas will be greater than those associated with the management of this case in Switzerland.  A court sitting in Laredo, Texas will

---

[14] Plaintiff Deccan Value Advisors Fund Ltd. ("DVAF") is a limited company formed in the Cayman Islands.  Compl., ¶12.

likely be faced with a variety of issues under Swiss law related to discoverability, and, further, will be faced with the inability to compel testimony and production from unwilling foreign witnesses. Obviously, a Swiss court will have little difficulty with such issues, as it is in the best position to apply Swiss law correctly and, as set forth above, it can compel the testimony of, and production from, unwilling Swiss residents. The second public interest factor, *i.e.,* the interest in having localized controversies resolved at home, has no applicability in this case, as the controversies do not involve Laredo, Texas. As to the third public interest factor, *i.e.,* having a trial in a forum that is familiar with the law that must govern the action, Defendants submit that U.S. law should not govern this case. Panalpina Holding does not file any reports with the Securities and Exchange Commission, and its stock is not traded on any U.S. securities exchange.[15] Rather, Panalpina Holding is subject to the Swiss securities laws and, therefore, the adequacy of its representations and/or whether such misrepresentations or omissions violated the law, should be determined in accordance with Swiss law.[16]

Furthermore, if this case did proceed in Switzerland, a Swiss court is in the best position to apply Swiss law. Thus, the fourth public interest factor weighs in favor of Switzerland. Finally, it would clearly be unfair to burden the citizens of Laredo, Texas with jury duty related to the trial of a matter having nothing to do with their city. As the Southern District of Texas has recently stated, "[w]hen considering the public interest factors, the key question a court must answer is 'whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it.'" *BBC Chartering,* 546 F. Supp. 2d at 444 (quoting *Seguros Commercial*

---

[15] Hess Decl., ¶¶14-18.
[16] *See* Bürgi Decl., ¶11.

**MOTION TO DISMISS FOR *FORUM NON CONVENIENS,***
**OR, ALTERNATIVELY, TO TRANSFER VENUE**                                    **Page 8**

*Americas S.A. de C.V. v. Am. President Lines, Ltd.,* 933 F. Supp. 1301, 1313 (S.D. Tex. 1996)). Obviously, in this case, there is no nexus with the Plaintiffs' chosen forum and, thus, the public interest factors clearly weigh heavily in favor of Switzerland.

The case of *Warlop v. Lernout* is instructive on the *forum non conveniens* issue presented herein. In that case, L&H, a Belgium company, traded its stock on both the NASDAQ and the European EASDAQ markets. 473 F. Supp. 2d 260, 262 (D. Mass. 2007). Plaintiffs brought a class action lawsuit against L&H and others asserting violations of the U.S. federal securities laws under Sections 10(b) and 20(a) of the Exchange Act. Lead plaintiffs in the case were three individuals from Belgium who sought to represent all investors of L&H who purchased their securities on the European EASDAQ. *Id.* The defendants sought to dismiss the case pursuant to the doctrine of *forum non conveniens. Id.* at 262.

The *Warlop* court first noted that the balance of private factors strongly supported dismissal of the case in favor of Belgium. In particular, the court found that, "[a]lthough this case involves an alleged fraud that spans three continents, the bulk of the harm and activity rests in Europe. The present case will be built primarily upon the testimony of many Belgium witnesses . . ., and documents churned up in Belgium concerning the collapse of L&H in Belgium. The fact that these securities were purchased in Europe and that most class members reside there suggest that Belgium would be a more proper forum." *Id.* at 263. The court further noted that it would likely be forced to "adjudicate complex issues of European law," and found that there was very little public interest in retaining the litigation because, not only were the lead plaintiffs non-residents, but the "fraud occurred primarily in Belgium." *Id.* at 263-4. While the court noted that there

were "much more difficult hurdles for Plaintiffs in Belgium, who do not have the class action mechanism or the ability to use a 'fraud on the market' theory to assist in its recovery," the fact that there was increased difficulty in proceeding in a foreign forum did not, without more, "render that forum inadequate." *Id.* Accordingly, the court dismissed the case under the doctrine of *forum non conveniens*. *Id.*

Although the plaintiffs in *Warlop* were foreign, the court's analysis in that case is still pertinent to the facts in this case, as the alleged fraudulent activity occurred in Switzerland, the Defendants are in Switzerland, and the Company's shares are traded exclusively on the Swiss exchange. The fact that three of the four Plaintiffs in this case are American shareholders of the Swiss entity does not preclude the dismissal of the case for *forum non conveniens*. On this issue, the First Circuit's decision in *Howe v. Goldcorp. Investments, Ltd.* is instructive.

In *Howe,* plaintiff was an American shareholder of a Canadian corporation whose shares were traded on the Canadian Stock Exchange. 946 F.2d 944, 945 (1st Cir. 1991). The corporate defendant, Goldcorp, sent annual reports, proxy statements, and similar material to shareholders in the United States and, further, sent regular dividends to shareholders in the United States. *Id.* at 945-46. In addition, Goldcorp employees answered by mail and by telephone questions posed to them by U.S. shareholders. *Id.* at 946. Further, Goldcorp had acquired two Canadian companies with assets in the United States and with American shareholders which, thereby, required them to comply with various U.S. Securities and Exchange Commission requirements. *Id.* Finally, U.S. shareholders owned approximately one-third of Goldcorp's stock. *Id.* Among other

claims, plaintiff asserted securities fraud under Section 10(b) for various alleged

misrepresentations that resulted from the stock price decline. *Id.* at 947.

    In analyzing defendants' motion, the *Howe* court noted that the balance of the

conveniences favored "with unusual strength, the Canadian defendants." *Id.* at 951. In

particular, the court found the following facts pertinent to its analysis:

> The relevant events surrounding both plaintiff's
> "misrepresentation" and "breach of fiduciary duty" claims
> took place *in Canada,* not in the United States. The
> Canadian directors of Goldcorp., its officers, its investment
> advisors, and its lawyers, meeting, speaking, planning, and
> acting *in Canada,* took (or failed to take) the actions that
> allegedly amounted to a failure to remain properly loyal to
> Goldcorp. and its shareholders. Canadian individuals also
> decided, *in Canada,* precisely what statements they or the
> corporation should make, or should not make, in public
> descriptions of changes in Goldcorp.'s Articles of
> Incorporation, of changes in Goldcorp.'s investment
> policies, and of circumstances surrounding the takeover of
> Dickinson and Kam-Kotia. They presumably arranged to
> have printed *in Canada* most of the documents embodying
> most of those statements (though they then disseminated
> many of these documents to shareholders throughout the
> world). Thus, the relevant actions, statements and
> omissions that underlie the plaintiff's claims of
> "misrepresentation" or "fraud" originated in Canada. Most
> of the background facts that might show those statements
> or omissions to be materially false or misleading occurred
> in Canada.

*Id.* (emphasis in original). In light of the foregoing, the court found that most of the

witnesses and most of the evidence were located in Canada. *Id.* The court further found

that Canadian courts, and not courts in the United States, had the power to compel the

testimony of the twelve potential Canadian witnesses that were presumably unwilling to

testify without compulsory process. *Id.* In analyzing the public factors, the *Howe* court

noted that, except for the presence of an American shareholder, the case had very little to

do with Massachusetts or any other jurisdiction in the United States but, rather, had a

great deal to do with Canada. *Id.* at 952-53. Accordingly, the court affirmed the district court's dismissal of the case on the basis of *forum non conveniens*. *Id.* at 953.

Likewise, in this case, the mere fact that three non-Texas residents assert claims under the federal securities laws (and common law claims of unknown origin) is insufficient to override the clear weight of the private and public interest factors favoring dismissal on the basis of *forum non conveniens*. Therefore, and for each of the foregoing reasons, Defendants request that the Court dismiss the Complaint in its entirety on that basis.

**B.    Alternatively, the Case Should Be Transferred to the Houston Division Pursuant to 28 U.S.C. § 1404(a).**

In the event this Court does not dismiss this action on the basis of *forum non conveniens*, and without waiving the arguments related thereto, Defendants assert that, in the interest of justice and for the convenience of virtually all parties and witnesses, the Houston Division is a more appropriate venue for this action.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In *In re Volkswagen of America Inc.*, the seminal case in the Fifth Circuit on Section 1404(a) motions, the court characterized a plaintiff's choice of venue as a "privilege" that "is tempered by the considerations of inconvenience under § 1404(a)." 545 F. 3d 304, 308 (5th Cir. 2008). The court determined that the standard for a 1404(a) transfer was "good cause," which is made when a movant demonstrates that the transferee venue is clearly more convenient than the venue chosen by the plaintiffs. *Id.* at 309, 315.

In analyzing motions to transfer venue, the Fifth Circuit has adopted the public and private interest factors set forth in the Supreme Court's *Gulf Oil Corp.* decision, for the court's consideration of whether a Section 1404(a) motion to transfer venue should be granted. *Id.* at 314. Those factors were quoted verbatim in Section A, *supra.* Although the public and private interest factors are appropriate for most venue transfer cases, they are not exhaustive or exclusive and none are of dispositive weight. *Id.*

In the first instance, Plaintiffs' choice of forum should not be given any deference, as there is no factual nexus to Laredo. *See, e.g., Hanby v. Shell Oil Co.,* 144 F. Supp. 2d 673, 674 (E.D. Tex. 2000) (where plaintiff's forum has no factual nexus to the case, the choice "carries little significance . . . ."); *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 655-59 (E.D. Tex. 1999) (granting an intra-district transfer from the Beaumont Division to the Paris Division of the Eastern District of Texas finding, among other things, that, because the case had no factual nexus to Beaumont, the citizens of Beaumont "should not be burdened with jury duty" to hear the case).

Notably, courts in the Southern District of Texas have granted both intra-district and inter-district transfers where the plaintiff's choice of venue has little or no factual connection to the case. In one such case, the court stated that the "decision to transfer a case between divisions lies completely within the discretion of the Court." *Doe v. Catholic Soc'y of Religious & Literary Educ.*, No. C-09-33, 2009 U.S. Dist. LEXIS 35635, at *5 (April 9, 2009) (citing *Tingey v. City of Sugar Land*, 2007 U.S. Dist. LEXIS 51881 (S.D. Tex. 2007)). Additionally, if venue is proper in one division of a district, it is clearly proper in another division within that same district because the venue statute, 28 U.S.C. § 1391, speaks in terms of districts, not divisions. *Id.* at *6-7.

Recently, in *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, No. H-09-0422, 2009 U.S. Dist. LEXIS 54747, at *2 (S.D. Tex. June 26, 2009), the court addressed the propriety of transferring a case from the McAllen Division to the Houston Division. In its analysis, the court discussed the relative case loads of the Houston Division and the McAllen Division, stating that the respective burdens were difficult to assess with great accuracy. *Id.* However, relevant to the court's analysis were the following facts: "between January and March 2009, the judges in the Houston Division received, on average, 95 new civil cases and 13 new criminal cases;" during that same period, "each judge in the McAllen Division was assigned 200 criminal cases and 50 civil cases;" "[d]uring the twelve month period ending March 31, 2009, Houston civil cases were open for an average of 229 days;" and "[d]uring the same period of time, McAllen civil cases were open an average of 563 days." *Id.* at *18. In light of these statistics, and the fact that the Southern District has been requesting approval to bring in two additional judges, one in McAllen and one in Laredo, for the past six or eight years, based upon the dockets in those divisions, the court concluded that administratively, it was preferable to retain the case in Houston, as the court in Houston could reach the dispositive issues more quickly than the court in McAllen could. *Id.* at *19. Ultimately, because the factors weighed somewhat equally between the two venues, the court found that a transfer to McAllen would not be "clearly more convenient" than Houston, and accordingly, denied the motion to transfer. *Id.* at *21-22.

In this case, the relevant factors reveal that Houston would be a more convenient venue than Laredo, particularly in light of the fact that there is no factual nexus between the Plaintiffs' claims and the Laredo Division. Despite Plaintiffs' allegation that

"[s]ubstantial acts in furtherance of the alleged fraud and/or its effects have occurred within this District,"[17] the Complaint is devoid of any facts to support such an assertion. In fact, the Complaint reveals that none of the Plaintiffs are domiciled in, or residents of, Texas,[18] none of the Defendants are domiciled in or residents of Texas,[19] none of the alleged misrepresentations is alleged to have been made from or into Texas,[20] and none of the Plaintiffs' purchases or sales of stock is alleged to have been made within Texas.[21] Rather, Plaintiffs misleadingly assert facts relating to Panalpina, Inc. in order to purportedly demonstrate that venue is proper in the Laredo Division.[22]  The allegations concerning Panalpina, Inc.'s business activities in or from Texas are nothing more than a red herring, and to the extent they could even be considered remotely relevant, which Defendants dispute, the Complaint focuses on activities in Houston, not Laredo.  The *only* references to Laredo in the Complaint are to the fact that Panalpina, Inc. has an office located there.[23]

Application of the private interest factors set forth in *In re Volkswagen* demonstrates that convenience and justice merit transfer of the case from the Laredo Division to the Houston Division.  As to "ease of access to sources of proof," Plaintiffs have not pled *any* facts indicating that any relevant sources of proof are located in the Laredo Division, and it is questionable whether any relevant evidence may be located in the Houston Division.  More likely, all relevant sources of proof are located either in

---

[17] Compl., ¶9.
[18] Compl., ¶¶11-14.
[19] Compl., ¶¶16-19.
[20] *See generally,* Compl.
[21] *See id.,* ¶15.
[22] *See, e.g., id.* at ¶ 16 (stating that "Panalpina" maintains offices in Texas …, including in Houston and Laredo).
[23] *Id.* at ¶¶9, 16, 23.

**MOTION TO DISMISS FOR *FORUM NON CONVENIENS*,**
**OR, ALTERNATIVELY, TO TRANSFER VENUE**                                    **Page 15**

Switzerland, or in the possession of the Plaintiffs, but none of which are located in Laredo, or any other city in Texas. Thus, this factor may be considered "neutral."

The second private interest factor, availability of compulsory process, favors (although only slightly) Houston over Laredo. Plaintiffs have not pled any facts indicating there would be any witnesses who are located in Laredo, and Defendants do not anticipate calling any witnesses from Laredo. In contrast, considering the allegations in the Complaint, it appears that if there are potential witnesses in the Southern District at all, they would most likely be located in Houston. For example, the Complaint refers to an unidentified "former Houston-based Panalpina employee" who worked for Panalpina in Moscow, who purportedly stated that "oil and gas provided the 'overwhelming majority of company revenue out of North America."[24] The Complaint further states that Panalpina "was, by far, the largest freight forwarder in Houston, with over 300 employees."[25] The Complaint also asserts that the "modus operandi" relating to Nigeria was "implemented by, among others, Bill Reddick in Houston, a senior vice president of Panalpina USA."[26] Thus, to the extent any of these customers or former employees of Panalpina, Inc. who are or may be located in Houston would be called as potential witnesses, they would be out of the 100-mile subpoena range for the Court in Laredo to compel their presence at trial. This factor arguably weighs in favor of transfer to Houston.

The cost for the attendance of willing witnesses favors Houston over Laredo. There are no known witnesses in Laredo, willing or unwilling. Yet there would clearly be costs associated with travel to Laredo for any potential witnesses located in Houston,

---

[24] Compl., ¶32.
[25] *Id.*
[26] Compl., ¶36.

as well as for those witnesses and parties located elsewhere, including outside of the United States. The Laredo International Airport is serviced by three commercial airlines: American, Continental, and Allegiant (with flights only to and from Las Vegas, Nevada), with limited flight availability and connections from other cities coming through either Houston or Dallas, particularly for international flights.[27] In contrast, flights are more easily scheduled to and from Houston's George Bush Intercontinental Airport – especially when considering the necessity of flights to and from Switzerland. In particular, the Houston Intercontinental Airport is identified as the eighth largest "international passenger gateway in the nation," with 17 passenger airlines flying in and out of the airport daily.[28] Adding a second (or more) round of flights from either Dallas or Houston to arrive into Laredo would clearly add time, cost, and inconvenience for all concerned. *See, e.g., Hanby,* 144 F. Supp. 2d at 678 (noting that Houston's two airports would serve travelers from out of state far better than the small regional airport in Beaumont and that it would be at least as inexpensive to travel into and obtain accommodations in Houston as in Beaumont and that the additional travel time from Houston to Beaumont favored transfer to Houston).

Additionally, Houston-based witnesses would require hotel accommodations in Laredo, adding to the cost and time away from home and family. The distance between Laredo and Houston is over 300 miles – more than three times the necessary benchmark set forth by the Fifth Circuit in *In re Volkswagen* for determining inconvenience. *See* 545 F.3d at 317 (stating that when the distance between the existing venue and the proposed

---

[27] *See* http://www.ci.laredo.tx.us/Airport/. Defendants request the Court to take judicial notice of the factual information on the Laredo International Airport website. "It is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.,* 499 F.3d 1218, 1224-25 (10th Cir. 2007) (and cases cited therein).
[28] *See* http://www.fly2houston.com/iahAbout. *See O'Toole,* 499 F.3d at 1224-25 (and cases cited therein).

venue is more than 100 miles, the inconvenience factor to witnesses "increases in direct relationship to the additional distance to be traveled"). Accordingly, this factor weighs in favor of transfer to Houston.

The final private interest factor, being a catch-all, would encompass such things as ease of access to copy and trial graphics facilities, office space (for "war rooms" and the like for trial preparation), hotel and restaurant accommodations, and frequency and timing of flights (particularly in light of the number of international witnesses and parties involved). It is self-evident that Houston, the fourth largest city in the United States with a population of 2.2 million people,[29] has a greater number of these types of facilities and services than Laredo, a city with a population of approximately 220,000.[30] Thus, this factor indicates that trial of the case would likely be more easy, expeditious, and inexpensive in Houston than in Laredo.

Just as with the private interest factors, application of the public interest factors also supports transfer of the case from the Laredo Division to the Houston Division. According to the court in *Mid-Continent Casualty Co.*, the Chief Judge in the Southern District has been requesting an additional judge for the Laredo Division for the past "six or eight years," based upon the case load in the Laredo Division, thus far to no avail. 2009 U.S. Dist. LEXIS 54747, at *19. Additionally, it appears that the criminal case load in the Laredo Division is significantly more burdensome than the civil docket, which could result in a lengthier delay in reaching the merits of the case in Laredo than would be the case in Houston. *See id.* This factor appears to weigh in favor of transferring the case to Houston.

---

[29] *See* http://factfinder.census.gov/servlet/SAFFPopulation. *See O'Toole,* 499 F.3d at 1224-25 (and cases cited therein).
[30] *Id.*

As to the second public interest factor, the Complaint is conspicuously devoid of reference to any pertinent activities having taken place in Laredo. However, (without in any way conceding that they are at all relevant), there are a few references in the Complaint to alleged (and attenuated) connections to Houston, including the location of certain "anonymous" witnesses.[31] Accordingly, this factor favors Houston over Laredo.

The familiarity of the forum with the law that will govern the case is the third public interest factor. Defendants submit that Swiss law should govern this case and, thus, this factor is neutral. However, assuming U.S. law will govern, it may be worth noting that, in the past five years, there have been no published federal securities fraud opinions decided in the Laredo Division, whereas there have been a significant number of such cases heard in the Houston Division, including two highly publicized cases: *United States v. Stanford*, 630 F. Supp. 2d 751 (S.D. Tex. 2009); and *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 610 F. Supp. 2d 600 (S.D. Tex. 2009). Thus, this factor arguably weighs in favor of the Houston Division.

The final factor, the avoidance of conflict of laws problems, is neutral.

In sum, applying the public and private interest factors to this case, it is clear that the factors weigh in favor of the transfer of the case from the Laredo Division to the Houston Division. Accordingly, should the Court decline to dismiss the Complaint on the basis of *forum non conveniens*, the case should be transferred to the Houston Division in the interest of justice and for the convenience of the parties and witnesses.

---

[31] *See* Compl., ¶¶16, 18, 24, 25, 32, 34, 36, 38, 43, 66, 82.

### III.
### CONCLUSION

Switzerland is the clear focal point of this case. The fact that Plaintiffs chose to purchase stock in a Swiss company from the Swiss Exchange does not, thereby, give them unfettered access to any Federal District Court in the U.S. that they deem to be most inconvenient to the Swiss Defendants. This is the very type of case for which the doctrine of *forum non conveniens* was designed.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully pray that their Motion to Dismiss be in all things granted, that Plaintiffs' Complaint be dismissed in its entirety on the basis of *forum non conveniens*, or, alternatively, transferred to the Houston Division, and for such other and further relief to which Defendants may show themselves justly entitled.

Respectfully submitted,

/s/ Elizabeth L. Yingling
Elizabeth L. Yingling, Attorney-in-Charge
State Bar No. 16935975
Southern District Bar No. 29405
BAKER & McKENZIE LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Telephone: 214/978/3000
Facsimile: 214/978/3099
elizabeth.l.yingling@bakernet.com

**ATTORNEYS FOR DEFENDANTS
PANALPINA WORLD TRANSPORT
(HOLDING) LTD. and MONIKA RIBAR**

## CERTIFICATE OF CONFERENCE

The undersigned avers on behalf of Defendants/Movants, Panalpina World Transport (Holding) Ltd. and Monika Ribar, in connection with the foregoing Motion to Dismiss for *Forum Non Conveniens*, or, in the Alternative to Transfer Venue, and Brief In Support that:

(1)     Movants have conferred with Respondents/Plaintiffs, and

(2)     Counsel for Movants and Respondents cannot agree about the disposition of the Motion(s).

(3)     Additionally, Movants have conferred with counsel for Defendant Fischer, and Defendant Fischer agrees and joins with Movants on both Motions.

(4)     Movants have not conferred with counsel for Defendant Sidler, as he has not made an appearance in the case, nor with Defendant Ernst Gohner Foundation, as it has been dismissed from the case.

/s/  Elizabeth L. Yingling
Elizabeth L. Yingling


## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties having appeared in the above cause by ECF/electronic mail in accordance with Rule 5, Federal Rules of Civil Procedure, on this 30th day of October, 2009.

/s/  Elizabeth L. Yingling
Elizabeth L. Yingling